**ALOE VERA OF AMERICA, INC., et al., Plaintiffs**

v.

**UNITED STATES of America, Defendant.**

**No. 99–1794–PHX–ROS.**

United States District Court, D. Arizona.

Sept. 21, 2000.

Edwin B Wainscott, Quarles & Brady Streich Lang LLP, Phoenix, AZ, Terence Dale Woolston, Woolston & Tarter PC, Phoenix, AZ, for Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, Maughan Holdings, Inc.

Merwin D Grant, Grant Williams Lake & Dangerfield PC, Phoenix, AZ, for Gene Yamagata, Yamagata Holdings, Inc.

Melissa A Holton, David M Katinsky, Isaac D Paxman, U.S. Dept of Justice, Washington, DC, for U.S.

David Jeremy Bodney, Peter Shawn Kozinets, Steptoe & Johnson LLP, Phoenix, AZ, Michael Kovaka, Dow Lohnes & Albertson PLLC, Washington, DC, for Bureau of National Affairs, Inc., Tax Management, Inc.

## ORDER

SILVER, District Judge.

### Introduction

On October 6,1999, Plaintiffs: Aloe Vera of America, Inc., ("AVA"), a Texas corporation, Rex G. Maughan ("Maughan") and Ruth Maughan, husband and wife, Maughan Holdings, Inc., an Arizona corporation, Gene Yamagata ("Yamagata"), an individual, and Yamagata Holdings, Inc., a Nevada corporation, ("Plaintiffs"), filed a Complaint against the United States of America ("Defendant" or the "Government"), under the Internal Revenue Code (the "IRC"), 26 U.S.C. § 7431(a)(1).

Plaintiffs seek to recover civil damages from Defendant for the alleged unauthorized disclosure of tax returns and attendant information by officers and employees of Defendant, through the Internal Revenue Service (the "IRS"), in violation of 26 U.S.C. § 6103. In the Complaint, Plaintiffs allege that the Government has waived sovereign immunity in this action, pursuant to 26 U.S.C. §§ 6103 and 7431.

On December 30, 1999, Defendant filed a Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Plaintiffs filed a Response on January 24, 2000, and Defendant filed a Reply on February 10, 2000.[1] The Court heard oral argument on July 10, 2000. At the conclusion of oral argument, Plaintiffs' counsel moved for leave to amend the Complaint in the event the Court finds it deficient.

### Facts

The Complaint makes the following factual allegations. Maugham owns or has a substantial ownership interest in a group of associated entities, the Forever Living Products companies ("FLP Group" or the "Group"), some of which are domestic and some foreign. The FLP Group is one of the largest world suppliers of health and beauty products based on the aloe vera plant. The FLP Group is vertically integrated from plantations that grow aloe, through shipping, processing, manufacturing, marketing and sales. Several million distributors worldwide are involved in the distribution of the Group's products. The distributing entity in Japan, FLP Japan, Ltd., ("FLPJ") is owned indirectly by Maugham and Yamagata, in equal parts.[2] AVA is one of the entities within the FLP Group and "is among a handful of U.S. owned entities which have been extremely successful in Japan and which pay significant tax liabilities to the Japanese Government." (Compl.¶ 16.) In tax year 1995, FLPJ paid an equivalent of $26,512,085 in national, prefecture, i.e., district, and local income taxes in Japan. Id.

In the summer of 1996, the IRS proposed to the Japanese National Tax Administration (the "NTA") a Simultaneous Examination involving United States taxpayers AVA, Maughan, and Yamagata and the Japanese taxpayer, FLPJ. (Compl.¶ 17.) On August 5 and 6, 1996, nine representatives of the IRS met with the six NTA officials in Phoenix, Arizona. During that time, the IRS "disclosed vast amounts of information and voluminous documents to the NTA," which, in the most part, "upon information and belief, constituted tax returns and return information of Plaintiffs, within the meaning of [26] § 6103(b)." (Compl.¶ 19.) Approximately on August 15, 1996, the IRS notified Maughan and AVA that a Simultaneous Examination with the NTA was being conducted for the years 1991 through 1995. (Compl.¶ 20.) At least one more meeting was held between the IRS and the NTA officials, in Tokyo, Japan, on November 13–15, 1996, during which additional information was disclosed by the IRS to the NTA, which "upon information and belief constituted tax returns and return information of plaintiffs, within the meaning of 26 U.S.C. § 6103(b)." (Compl.21.) Thereafter, a Simultaneous Examination Audit plan (the "Audit Plan") proposed by the IRS to NTA was accepted by the latter and executed by both agencies. (Compl.¶ 22.) In late 1996, Mr. Kobyashi of the NTA, Tokyo Regional Taxation Bureau ("TRTB"), "threatened representatives of Plaintiffs and FLPJ with a press leak when attempting to coerce FLPJ and Plaintiffs into accepting the audit proposal made by the TRTB." (Compl.¶ 23.) The FLPJ did not accept the proposal and, on January 20, 1997, the NTA issued Correction notices to FLPJ in the amount of approximately 8 billion yen, i.e., approximately 73 million U.S. dollars.

---

1. The parties obtained extensions of time to file their respective pleadings.

2. Maugham Holdings owns 50% of FLJP and Yamagata Holdings owns the other 50%.

(Compl.¶ 24.) On February 5, 1997, the IRS issued a thirty-day notice for 1991 and 1992 to Maughan and AVA. (Compl.¶ 25.) On December 22, 1997, the NTA issued Correction Notices to FLPJ for 1996 in the amount of approximately 2 billion yen, *i.e.,* approximately 20 million U.S. dollars. (Compl.¶ 26.)

Plaintiffs allege that

The IRS Audit Plan was incorrect, erroneous, and flawed as a matter of U.S. domestic tax law, international tax law, the U.S.-Japan Tax Treaty, and the Organization for Economic Cooperation and Development ("OECD") guidelines for transfer pricing. The IRS Audit Plan intentionally ignored appropriate transfer pricing analysis; the effects of the U.S. and Japanese adjustments proposed as a result of the Simultaneous Examination was to impose double taxation of income in contravention of the U.S.-Japan Income Tax Treaty.

(Compl.¶ ¶ 27–28.) According to the Complaint, the primary issue was the NTA's characterization of "certain contract amounts paid by AVA to Maughan and Yamagata on the sale of AVA products to FLPJ," which the NTA characterized as income in the form of a director's bonus, coming directly from FLPJ, while the same amounts had been reported by AVA in the United States as taxable income. (Compl.¶ 30.) The IRS did not consider these contract payments made by AVA to Maughan and Yamagata as ordinary and necessary business expenses and, consequently, disallowed deduction of these amounts under 26 U.S.C. § 162(a). *Id.* As a result of such treatment of these payments, over $100 million in additional income was shifted from the United States to Japan, increasing FLPJ's profit margin and tax liability in Japan for the audit years 1991–1995. *Id.*

Plaintiffs further allege, that Defendant, in violation of standard IRS procedure, did not consult the U.S. Competent Authority, located in Washington, D.C., which is responsible for preventing double taxation

under several U.S. Income Tax Treaties, and that the Audit Plan was not approved by the U.S. Competent Authority. (Compl.¶ 32.) On March 24, 1997, the FLP Group requested Competent Authority Assistance, which request was granted. (Compl.¶ 33.) The U.S. taxpayers contested the tax audit adjustments. (Compl.¶ 34.) At the end of August 1997, the IRS Appeals Officer in Phoenix, Arizona, conceded the primary Simultaneous Examination issue and the proposed $32 million income increase to AVA for 1991 and 1992. The concession was issued in writing, on or about October 24, 1997. (Compl.¶ 35.)

To date, despite the efforts of the U.S. Competent Authority, the Japanese Competent Authority refuses to accept that this matter involves the U.S.-Japan Tax Treaty and "continues to erroneously insist that the matter is wholly one of internal Japanese Taxation and that transfer pricing is not relevant to the resolution of the issue." (Compl.¶ 36–37.) Plaintiffs allege that the NTA's position is a result of the improper actions by the IRS described in the Complaint. *Id.* Specifically, Plaintiffs allege that

The IRS ... disclosed false information to the NTA in an attempt to improperly and irrevocably prejudice the NTA against plaintiffs and FLPJ, (including but not limited to the following), to wit:

(a) That the United States and Japanese taxpayers committed fraud;

(b) That commission payments by AVA to Rex Maughan and Gene Yamagata on AVA sales to FLPJ remained unchanged over the years although cost of product to FLPJ changed;

(c) That Rex Maughan made a decision to move income and assets from and out of FLP, Inc. so that a tax deficiency due to the IRS could not be collected;

(d) That Rex Maughan set up the "Batrax System"[3] tax shelter designed to bring income into the United States

---

**3.** None of the parties offer a definition or explanation of what is the "Batrax System."

from other countries without paying tax; and

(e) That the FLP Group has built much wealth by not paying taxes and that FLP was not in compliance with the U.S. tax laws.

(Compl.¶ 39.) Plaintiffs further allege that all of these statements were presented to the NTA as facts, though they were "unverified, unsubstantiated, inaccurate, and [the] false position of the IRS calculated to produce the desirable Simultaneous Audit result, which was double taxation." (Compl.¶ 40.) Plaintiffs allege that the IRS either knew or should have known that the statements were false, and that, as a result of the IRS's actions, on October 9 and 10, 1997, Japanese media published numerous stories about the FLPJ tax deficiencies. These stories appeared on Japanese national radio and television and in all five of the major Japanese newspapers with national circulation. The stories were also picked up by the International Press and reported in the United States. (Compl.¶ 43.) "The stories contained extensive return information as well as numerous false and inflammatory statements and were ascribed 'to those involved in the audit.'" (Compl. ¶ 44.)

The IRS has denied any leaks to the Japanese press. (Compl.¶ 45.) Plaintiffs allege that the IRS knew or should have known the NTA's practice of leaking confidential tax information to the press, which is allegedly routinely used by the NTA in order to either coerce a taxpayer or create prejudice against it. (Compl.¶ 49.) "Based on the press leak and complaints by U.S. taxpayers Rex Maughan and AVA, John Lyons, the IRS Assistant Commissioner International and the U.S. Competent Authority first suspended and then terminated the Simultaneous Examination between Japan and the United States regarding the U.S. taxpayers Rex Maughan and AVA and the Japanese taxpayer FLPJ." (Compl.¶ 53.) Plaintiffs allege that the FLPJ "has been harmed as a

direct and proximate result of the unauthorized disclosure of false information by, *inter alia,* declining sales, by damaged reputation, by a decline in new distributor applications, and a decline in existing distributor participation in the sale of AVA products through FLPJ." (Compl.¶ 73.) Plaintiffs allege that AVA has been harmed, because FLPJ has not paid it royalties timely, and has not increased orders of AVA products as it should have based on historical data, and these orders actually declined. (Compl.¶ 74.) Maugham Holdings has been damaged through decline in stock value and dividends. (Compl. ¶ 75.) Maughan, who is the sole shareholder of AVA and a 50% shareholder of FLPJ through Maughan Holdings has been damaged "in an amount to be established at trial." (Compl.¶ 76.) Yamagata Holdings, a 50% shareholder of FLPJ has been damaged through decline in stock value and dividends. (Compl.¶ 77.) Yamagata, a 50% shareholder of FLPJ through Yamagata Holdings has been damaged "in an amount to be established at trial." (Compl.¶ 78.) In addition to the economic damages Plaintiffs also seek punitive damages, alleging that the conduct of the IRS was knowing, willful and/or grossly negligent. (Comp. ¶ 79.)

The Complaint alleges two causes of action: (1) unauthorized disclosure of false information; and (2) illegal Japanese disclosure.[4]

## Discussion

Defendant seeks dismissal under both Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed. R.Civ.P. 12(b)(6), for failure to state a claim. Defendant makes four arguments: (1) the Court lacks subject matter jurisdiction because Plaintiffs' failed to bring this action timely, (Mot. at 5); (2) disclosures made by the NTA do not bring this suit within the sovereign immunity waiver

---

4. By the latter the Complaint appears to mean disclosure of Plaintiffs' actual tax return information by the IRS to the Japanese NTA and not by the NTA to the press. (Compl.¶ ¶ 42, 67–72.)

under 26 U.S.C. § 7431(a)(1), which requires unauthorized disclosure by an employee of the United States,[5] (Mot. at 4); (3) disclosures by the IRS to the NTA were authorized by 26 U.S.C. § 6103(k)(4); (4) Plaintiff's first cause of action lies in tort because it is a disguised action for libel or slander, over which the Court has no jurisdiction. (Mot. at 12.)

In Response Plaintiffs argue that the government waived sovereign immunity and in particular (1) the action was brought within two years after Plaintiffs discovered that the IRS was the source of the information disclosed to the NTA, and therefore it is timely; (2) Plaintiff's Complaint is not based on disclosures made by the NTA to the media but on disclosures made by the IRS to the NTA; (3) the disclosures were unauthorized by the statute because they did not fall within the parameters of the secrecy requirement of the treaty between the United States and Japan; and (4) Plaintiffs' action is for unauthorized disclosure and not for libel.

### 1. Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

■ Rule 12(b)(1) provides that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion; (1) lack of jurisdiction of the subject matter ..." Fed.R.Civ.P. 12(b)(1). The burden is on Defendant to establish that this defense exists.[6] But if the statute is jurisdictional, it is Plaintiffs' task to present the Court with sufficient information to allow the Court to make the determination whether the action is timely. Plaintiffs allege jurisdiction pursuant to 26 U.S.C. § 7431(a) and 28 U.S.C. § 1331. However, the Court will not assume that the allega-

tion of jurisdiction is accurate but will examine it independently. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987).

■ It is well established that the United States cannot be sued unless it unequivocally consents to the suit. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (citing *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (quoting in turn *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), and *United States v. King* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969))). Consequently, "the Government's consent to be sued 'must be construed strictly in favor of the sovereign, and not enlarg[ed] ... beyond what the language requires.'" *Id.* (citing *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951); and *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938, (1983) (quoting *Eastern Transportation Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927))).

Defendant argues that Plaintiffs have not satisfied the conditions for establishing waiver of sovereign immunity set forth in the statute they invoke, 26 U.S.C. § 7431. The statute provides:

> Inspection or disclosure by employee of United States.–If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7431(a)(1). Thus, § 7431 requires that a disclosure by the IRS officer or employee be made in violation of 26

---

5. This argument was based on Defendant's perception that "Illegal Japanese Disclosure" means disclosure by the NTA to the press. The text of the Complaint does not allege this, the unclear title of Count II notwithstanding.

6. The Court may raise the issue *sua sponte. See* Fed.R.Civ.P. 12(h); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

U.S.C. § 6103. That statute provides in part:

(a) General rule.–Returns and return information shall be confidential, and except as authorized by this title–

(1) no officer or employee of the United States,

. . . . .

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

26 U.S.C. § 6103(a). Additionally, there is a limitation period within which any action under 26 U.S.C. § 7431(a)(1) may be brought, which is two years after the plaintiff discovers the unauthorized disclosure:

Period for bringing action.–Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure.

26 U.S.C. § 7431(d). Defendant asserts that, even if the unauthorized disclosures occurred, which Defendant does not concede, Plaintiffs failed to file their Complaint within the statutorily allowed time. Further, Defendant argues that because the terms and conditions imposed by the statute define the Court's jurisdiction over this matter, the Court is without jurisdiction to entertain Plaintiffs' action. (Mot. at 5–8.) Specifically, Defendant argues that because Plaintiffs did not allege in their Complaint that they became aware of the unauthorized disclosures within two years of bringing this action, the action is

barred and the Complaint must be dismissed. (Mot. at 7.)

In support of this argument, Defendant cites two unpublished district court cases: *Detrick v. United States*, 1991 WL 28877 *3 (D.Or. Jan. 23, 1991), *aff'd on other grounds*, 962 F.2d 13 (9th Cir.1992) and *Pack v. United States*, 1991 LEXIS 15523 (E.D.Cal. October 11, 1991). The latter case involved a motion for summary judgment not a motion to dismiss: "Although plaintiff alleges in his complaint that he learned of the ... disclosures within the last two years, he has not submitted any admissible evidence to show [it]." *Id.* Here, however, because Defendant moved to dismiss and not for summary judgment, the question is not whether Plaintiffs can or have proved the timeliness of their case but whether the allegation of timeliness in the Complaint is sufficient. Further, in *Detrick*, the plaintiffs alleged unauthorized disclosures pursuant to a statute which "appear[ed] to correspond to the filing of notices of a federal tax lien and the service of notice of levy." 1991 WL 28877 *2. The plaintiffs in *Detrick* did not and could not allege, as the Plaintiffs here assert, that they discovered the alleged disclosures long after the disclosures were made, because the facts established that they had actual knowledge that the notices were issued by the IRS at the time they were issued. The court held that to the extent the notices did contain unauthorized disclosures, because they were issued more than two years before the plaintiffs filed their complaint, plaintiffs' action under 26 U.S.C. § 7431 was time barred. *Id.* *3.[7] Affirming the district court's order (also in an unpublished decision), the Ninth Circuit held that the disclosures in notices of a federal tax lien and levy were authorized by 26 U.S.C. § 6103(k)(6), and,

---

7. The *Detrick* court stated that the limitations period under 26 U.S.C. § 7431(d) "begins to run from the date upon which the plaintiff knows or should have known of the subject injury." *Detrick*, 1991 WL 28877 *2. The cases the court cited in support of this legal standard, however, all arose under either. 42

U.S.C. § 1981 or 42 U.S.C. § 1983, and not under the Internal Revenue Code. The statute applicable here, 26 U.S.C. § 7431(d), establishes the two year limitation period from the time the plaintiff "discovers" the unauthorized disclosure, rather than from time the plaintiff "should have known" of the injury.

therefore, the court did not discuss the district court's holding that the claim was time barred and, therefore, outside of the court's jurisdiction.

In *Amcor Capital Corp. v. United States*, 1995 WL 515690 (C.D.Cal. June 13, 1995), another unpublished opinion upon which Defendant relies, the court–converting a motion to dismiss into one for summary judgment–found that, though plaintiff alleged that it did not discover the unauthorized disclosure until 1994, several documents in the record, and specifically plaintiff's own letters and internal memoranda, demonstrated that the plaintiff knew of the alleged unlawful disclosure more than two years before the complaint was filed. In the case at bar, however, there are no such documents in the record which would permit the Court to make such a finding.

Plaintiffs assert that Defendant is aware of the exact date when Plaintiffs discovered that the IRS made the allegedly unauthorized disclosures, having finally disclosed the documentation of the disclosures made to the NTA, pursuant to District Court Judge Carroll's order issued on August 7, 1998 to Defendant in another case filed by Plaintiffs, under the Freedom of Information Act ("FOIA").[8] Further, during oral argument, Plaintiffs' counsel pointed out that Fed.R.Civ.P. 8(c), which guides pleading of the affirmative defenses, supports the notion that it is a defendant's duty to plead the statute of limitations as a defense. *Id.*

The Complaint does not expressly state that the discovery was made within two years of Plaintiffs' action. This deficiency in Plaintiffs' pleading, will only bar this action if the Court finds that § 7431(d) is jurisdictional and as a result Plaintiffs were obligated to establish in their Complaint that its cause of action accrued within two years before filing.[9]

**A. Whether § 7431(d) is jurisdictional.**

Defendant mentions, in a footnote, that "[t]here is some question in the Ninth Circuit whether statutes of limitation regarding actions against the United States remain jurisdictional after the Supreme Court held in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) that such statutes of limitation may, in rare instances, be equitably tolled." (Mot. at 6 n. 2.) Defendant points to three Ninth Circuit cases: *Nesovic v. United States,* 71 F.3d 776, 777–78 (9th Cir.1995), which holds that the plaintiff's failure to sue the United States within the statutory period of limitations deprives the district court of jurisdiction to consider the action; *UOP v. United States,* 99 F.3d 344, 347 (9th Cir.1996), which holds that 28 U.S.C. § 2401(a) is jurisdictional and cannot be waived; and *Cedars–Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 770 (9th Cir.1997), holding that 28 U.S.C. § 2401(a) is not jurisdictional.

*Cedars–Sinai* dispels any doubts what the Ninth Circuit's position is, after *Irwin,* on statutes of limitation in cases against the United States. In *Cedars–Sinai,* the Ninth Circuit said that "earlier statements that statutes of limitations are jurisdictional in nature have no continuing validity after the Court's decision in *Irwin,*"[10] and, unless "the language of a statute of limita-

8. On June 29, 1998, Judge Carroll ordered the IRS to release all requested documents on or before August 13, 1998, unless it showed cause why the documents should not be released. The IRS released a portion of the requested documents on August 7, 1998. (Resp. at 5–6.)

9. Plaintiffs would then be allowed to amend their Complaint to insert, if they can in good faith, the factual allegations establishing the timely filing of the Complaint.

10. *Irwin* involved a suit brought pursuant to Title VII. The Ninth Circuit cases cited by Defendant involve statute of limitations under FTCA, 29 U.S.C. § 2401(a), which "is the catchall statute of limitations provision," *see Nesovic,* 71 F.3d at 777, which provides in relevant part that. "... every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

tions [speaks] of jurisdiction," the statute is not jurisdictional. 125 F.3d at 770.

■ The statute at issue here, 26 U.S.C. § 7431(d), "does not speak of jurisdiction, but erects, only a procedural bar," *Cedars–Sinai*, 125 F.3d at 770, when it provides that actions under that section of the IRC "may be brought, without regard to the amount in controversy, at any time within 2 years after the dew of discovery by the plaintiff of the unauthorized inspection or disclosure." 26 U.S.C. § 7431(d). Based on *Irwin* and *Cedars–Sinai*, the Court finds that § 7431(d) is not jurisdictional.

In their Response to Defendant's Motion to Dismiss, Plaintiffs do not separately discuss whether the statute is jurisdictional or procedural, and do not discuss the cases cited by Defendant in support of its argument on this issue,[11] but concentrate on rebutting Defendant's allegation that the statute has run, by arguing facts which may establish that they discovered the disclosure and filed the Complaint within the statutory two year time period. The resolution of this remaining allegation in Defendant's Motion to Dismiss, under Rule 12(b)(1), requires that the Court decide whether Plaintiffs' action was untimely filed and, therefore procedurally barred. That, in turn, depends on the determination of when did Plaintiffs' cause of action accrue.

**B. When did Plaintiffs' cause of action accrue.**

Pursuant to the statute, an action for unauthorized disclosure may be brought "within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure." 26 U.S.C. § 7431(d). Defendant points out that, according to the Complaint, the allegedly unauthorized information was disclosed by the representatives of the IRS to the representatives of the NTA on two occasions: first, during meetings held in Phoenix, on August 5 and 6, 1996, (Compl.¶ 19), and then, during meetings held on November 13 through 15, 1996, in Tokyo, (Compl.¶ 21.) These meetings occurred more than two years prior to Plaintiffs' filing of the Complaint. As previously noted, in its Motion to Dismiss, Defendant emphasizes that Plaintiffs have not alleged that they "discovered" the allegedly unauthorized disclosures less than two years before filing their Complaint. (Mot. at 7) (citing 26 U.S.C. ¶ 7431(d)). Defendant further argues:

> In fact, plaintiffs own allegations establish clearly that they discovered the alleged disclosures more than two years before bringing this suit. Plaintiffs allege that the IRS notified them of the Simultaneous Examination being conducted by the IRS and the NTA or about August 15, 1996. Plaintiffs further assert that the NTA threatened them in late 1996 with a press leak if they did not accept an audit proposal made by the NTA's Regional Tax Bureau. Finally, plaintiffs allege that, on January 20, 1997, the NTA issued Correction Notices in furtherance of the Simultaneous Examination. Thus, plaintiffs knew on or before January 1997 that the IRS had made the alleged disclosures.

(Mot. at 7–8.) In Response, Plaintiffs state that "[t]here is no dispute that the two-year period does not begin to run until after Plaintiffs discover the unauthorized disclosure." (Resp. at 5, citing Mot. at 3.) Plaintiffs further state:

> Defendant argues, without logical support, that plaintiffs discovered the alleged disclosure more than two years before bringing the suit. Defendant first points to the allegation that on or around August 15, 1996, the IRS notified Plaintiffs of the simultaneous examination being conducted by the IRS. Noth-

---

11. Addressing the issue of statute of limitations, in a footnote, Plaintiffs make a general statement that the "cases cited by Defendant on this issue are distinguishable because, *inter alia,* none involved a situation where the De-

fendant concealed the wrongful conduct at issue." (Resp. at 5 n. 5.) It is unclear whether Plaintiffs refer to the cases which Defendant cites in its discussion of jurisdiction or to the accrual of the cause of action.

ing about this notification gave taxpayers any possible indication of unlawful disclosures made by IRS employees during this examination. In the same vein, the threats from the NTA in late 1996, and the issuance of correction notices by the NTA in January of 1997, gave Plaintiffs no possible indication that the IRS was responsible for making unlawful disclosures or false statements to the NTA. (Resp. at 7 n. 7.) Finally, Plaintiffs claim it was only after they received the documents from Defendant, on or about August 13, 1998, as ordered by Judge Carroll, that they discovered the unauthorized disclosures by the IRS to the NTA. Thus, it is claimed that the Complaint was filed less than two years thereafter. (Resp. at 7.)

 The Court finds that Plaintiffs' position in response to the Motion to Dismiss is not inconsistent with the allegation made in the Complaint that *much* of the information which appeared in the press reports was known only to the IRS and the NTA. (Compl. ¶ 46.) If the press publications contained all information known by the IRS and–arguably as a result of the simultaneous examination–to the NTA, then, Plaintiffs would have known at the time the reports were published that the IRS made an allegedly unlawful disclosure. But, because of the allegations made by Plaintiffs in response to the Motion to Dismiss, it is unclear at this time, precisely what information published in the press releases was disclosed by the IRS to the NTA. Further, it is not apparent what portion of the press releases was derived from the actual tax return information allegedly disclosed by the IRS. The Court must await completion of discovery for resolution of this issue.

Defendant also argues that Plaintiffs' cause of action accrued long before the discovery provided by its FOIA case, relying on *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Defendant argues that "[i]n a case for more sympathetic to a plaintiff than the present case, the Supreme Court held that a veteran's action for medical malpractice accrued for statute of limitation purposes once he was aware of his injury and that the probable cause of injury was treatment at a Veterans Administration hospital, even though he did not learn till later that the injury was negligently inflicted as a matter of law." (Rpl. at 4). The Court finds that *Kubrick* is distinguishable. There, the Supreme Court held that a cause of action under the FTCA accrues when a plaintiff is aware of his injury and the probable cause of such injury. *Id.* at 121, 100 S.Ct. 352. The Supreme Court distinguished between a plaintiff's knowledge of his legal rights and his knowledge of the injury and its cause:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury.

*Id.* at 122, 100 S.Ct. 352. To the extent the same reasoning may apply to causes of action accruing under 26 U.S.C. § 7431, Plaintiffs in the case at bar were allegedly in the position of one who may have learned that the injury occurred when the press reports were published, but the actual cause, *i.e.,* the alleged illegal disclosure by the IRS, arguably, may not have occurred until Judge Carroll mandated the release of the pertinent documents by the IRS to Plaintiffs in 1998.

At oral argument, Defendant further argued that the recently decided case of *Rotella v. Wood,* 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) lends additional support to the argument that the discovery of the injury is the accrual date of the statute of limitations pursuant to 26

U.S.C. § 7431. Defendant's reliance on *Rotella* is misplaced. In that case, the plaintiff was admitted to a psychiatric hospital in 1985 and released in 1996. In 1994, the hospital's parent company and one of its directors pleaded guilty to criminal fraud charges stemming from illegal agreements with the doctors. In 1997, Plaintiff brought an action under the federal civil RICO statute, 18 U.S.C. § 1961–1968, which does not include a limitations provision. A unanimous Supreme Court held that the civil RICO claim accrues when a plaintiff discovers his injury, not when the second or any subsequent act of racketeering occurs, which is consistent with the wording of the statute. 120 S.Ct. at 1080. The Supreme Court did not depart from its holding in *Kubrick*. Consequently, *Rotella* does not alter the Court's analysis in the case at bar.

Finally, Defendant argues that Plaintiffs failed to provide "a verified statement that they discovered the unlawful disclosures within the two-year limitations period. Instead they produced a 'tale ... full of sound and fury signifying nothing.'" (Rpl. at 3.) Defendant does not offer authority which requires Plaintiffs to provide a verified statement in the Complaint.

The above discussion notwithstanding, the complaint alleges that the two meetings during which the IRS allegedly made unauthorized disclosures took place on August 5–6, 1996, and on November 13–15, 1996. The Complaint was filed on October 6, 1999, more than two years after the last of the two meetings. Consequently, on its face, by failing to plead the date of discovery of the alleged unauthorized disclosures, the Complaint supports Defendant's argument that this action is untimely and, therefore, Defendant's Motion to Dismiss will be granted. However, during oral argument, Plaintiffs offered a factual explanation which may support their position that the Complaint was timely filed and Plaintiffs moved for leave to amend.[12] Be-

cause the defect in the Complaint may be cured by the amendment, the Court will grant Plaintiffs' Motion for Leave to Amend, to allege, if they can in good faith, facts in support of their contention that they did not discover the alleged unauthorized disclosures until the IRS responded to Judge Carroll's order in Plaintiff's FOIA case.

## 2. Defendant's Motion to Dismiss for failure to state a claim

Defendant also alleges that Plaintiffs failed to state a claim for which relief may be granted, because the disclosures made by the IRS to the NTA were authorized by statute, and specifically by 26 U.S.C. § 6103(k)(4).

### A. Legal standard.

Defendant invokes Fed. R. Civ.P. 12(b)(6). "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (internal quotation marks omitted). In determining whether a complaint states a claim for which relief can be granted, all allegations of material fact are taken as true and construed in the light most favorable to the Plaintiff. *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir.1998). Dismissal under Rule 12(b)(6) is proper only when looking at the complaint and any materials attached to the complaint, the court finds no possible set of facts which could support the stated claim; in other words, the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999). When deciding a motion to dismiss under Rule 12(b)(6) the Court may consider documents attached to the complaint. *See Hal Roach Studios v.*

---

12. At this time the Court does not find that the proposed amendment would be futile as alleged by Defendant. The Court may recon- sider after appropriate discovery is completed and/or the issue has been properly briefed by motion.

*Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir.1989) (holding that materials submitted with the complaint may be considered on a motion to dismiss under Fed. R.Civ.P. 12(b)(6)); and *cf. Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991) (briefs, affidavits, discovery materials may not be considered). If a complaint is dismissed, a plaintiff is entitled to leave to file an amended complaint "unless it is clear ... that the complaint could not be saved by any amendment." *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 879 (9th Cir.1999) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.1998)).

### B. Whether Plaintiffs stated a claim for unauthorized disclosure under 26 U.S.C. § § 6103 and 7431.

Section 6103 of the IRC provides the general rule that "returns" and "return information" are confidential. *See* 26 U.S.C. § 6103(a) & (b); *Long v. IRS*, 891 F.2d 222, 223 (9th Cir.1989) ("return information ... is confidential"); *Lampert v. United States*, 854 F.2d 335, 336 (9th Cir. 1988). Section 7431 of the Code created a private cause of action by a taxpayer against the United States for improper disclosure of such information and provides for damages. 26 U.S.C. § 7431. Section 7431 prohibits knowing or negligent disclosure or allowance of inspection of a taxpayer's return or return information to persons outside the agency unless circumstances arise which fall within one of the exceptions set forth in 26 U.S.C. 6103. Consequently, to state a claim for unauthorized disclosure under 26 U.S.C. § 7431, Plaintiffs must allege "(1) that the disclosure [by IRS] was unauthorized; (2) that the disclosure was made knowingly or by reason of negligence; and (3) that the disclosure was in violation of section 6103." *See Weiner v. Internal Revenue Service*, 789 F.Supp. 655, 656 (S.D.N.Y.1992), *aff'd*, 986 F.2d 12 (2d Cir.1993) (citing *Christensen v. United States*, 733 F.Supp. 844, 849 (D.N.J.1990), *aff'd*, 925 F.2d 416 (3d Cir. 1991); *Flippo v. United States*, 670

F.Supp. 638, 641 (W.D.N.C.1987), *aff'd*, 849 F.2d 604, 1988 WL 60765 (4th Cir.1988)).

The statute provides the following definitions which are relevant here:

The term "return information" means–

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or *any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability* (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other, imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110, and

. . . . .

The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

26 U.S.C. §§ 6103(b)(1), (2), (3) (emphasis added). The statute also gives a broad definition of a "disclosure" as "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8). As previously stated, the Complaint alleges that the IRS disclosed, in violation of § 6103, the following:

(a) That the United States and Japanese taxpayers committed fraud;

(b) That commission payments by AVA to Rex Maughan and Gene Yamagata on AVA sales to FLPJ remained un-

changed over the years although cost of product to FLPJ changed;

(c) That Rex Maughan made a decision to move income and assets from and out of FLP, Inc. so that a tax deficiency due to the IRS could not be collected;

(d) That Rex Maughan set up the "Batrax System" tax shelter designed to bring income into the United States from other countries without paying tax; and

(e) That the FLP Group has built much wealth by not paying taxes and that FLP was not in compliance with U.S. tax laws.

(Compl. ¶ 39.)

### 1. Whether the alleged disclosures constituted return information.

As a preliminary matter, both parties, relying on *Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir.1993), appear to agree that disclosure of false information may constitute tax return information within the definition of the statute.[13] (Mot. at 13 n. 6) and (Resp. at 9 n. 11.) In *Mallas,* the IRS sent numerous letters, the so called revenue agents reports (the "RARs"), to plaintiffs' investors, informing them that plaintiffs were convicted of an illegal tax shelter scheme. The IRS neglected to mention that plaintiffs' convictions were overturned on appeal. The Fourth Circuit held that the information disclosed to plaintiffs' investors was false information and that such false information constituted tax return information within the meaning of the statute. The Government argued that the letters to plaintiffs' investors were not tax return information. The Fourth Circuit disagreed.

The Government first argues that the information in the RARs was not "return information" of Mallas and Jones because it was not prepared by the IRS specifically with respect to their returns. *See* Government's Reply Br. 3 ("[I]nformation about a taxpayer must have its genesis in an examination or investigation of that taxpayer's tax liabilities in order to constitute 'return information.'" (emphasis added)). This argument simply misconstrues section 6103. "Return information" is *expansively defined* in 26 U.S.C. § 6103(b)(2)(A) as *"any ... data ... prepared by ... the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof)* of any person under this title for any tax penalty, interest, fine, forfeiture, or other imposition, or offense."

*Id.* at 1118 (emphasize added) (footnote omitted). Thus, all and any data prepared with respect to the return is return information which included the false information disclosed by the IRS concerning the status of the taxpayers' criminal matter. The Fourth Circuit concluded the IRS disclosures were not authorized. *Id.* at 1124.

■ The Fourth Circuit's broad characterization of what qualifies as "return information" under the statute is equally applicable to the case at bar. Because information allegedly disclosed by the IRS to the NTA was "prepared by ... the Secretary" allegedly "with respect to the determination of the existence, or possible existence, of [tax] liability (or the amount thereof) of [Plaintiffs]," *see* 26 U.S.C. § 6103(b)(2)(A), such information constitutes "return information" within the definition provided by the statute.

The remaining issue is whether the disclosures of Plaintiffs' return information, which the IRS made to the NTA in the course of the Simultaneous Examinations, where authorized by the same statute as a matter of law.

### 2. Whether the disclosures were authorized by § 6103(K)(4).

Defendant commences its argument with the statement that all disclosures of infor-

---

**13.** Plaintiff's citation to *Mallas, i.e., Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir. 1993) is incorrect. (Resp. at 9 n. 11.)

mation the IRS made to the NTA in the case at bar were authorized by § 6103(k)(4), which reads:

> Disclosure to competent authority under tax convention.–A return or return information may be disclosed to a competent authority of a foreign government which has an income tax or gift and estate tax convention, or other convention or bilateral agreement relating to the exchange of tax information, with the United States *but only* to the extent provided in, and subject to the terms and conditions of, such convention or bilateral agreement.

*Id.* (emphasis added). Defendant then points to Article 26 of the "Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, entered July 9, 1972, TIAS 7365, 1973–1 C.B. 630," (the "Convention"), (Mot. at 9), which provides for exchange between "the competent authorities of the Contracting States" of "such information as is pertinent to carrying out the provisions of this Convention or preventing fraud or fiscal evasion in relation to the taxes which are the subject of this Convention." *Id.* Defendant argues that the simultaneous examination by the IRS and the NTA was conducted pursuant to the Convention with the goal of determining "whether certain transactions between the U.S. taxpayers and the Japanese taxpayer, FLPJ, were being consistently and properly reported to both countries. If they were not, such failure could constitute fraud, fiscal evasion and/or civil underreporting of United States and/or Japanese tax." (Mot. at 10.) Consequently, Defendant argues, any disclosures the IRS made to NTA in the course of the simultaneous examination was in furtherance of the mutual goal of the two taxing agencies, pursuant to the Convention and authorized by the statute.

Plaintiff responds that the applicable provisions of the Convention only apply to disclosure of information pertinent to carrying out the provisions of that Convention or for any fraud or fiscal evasion of taxes, and, therefore, disclosure of false statements are not authorized disclosures became they "could not possibly have any bearing upon the exchange of 'pertinent information' between the United States and Japan." (Resp. at 13.) Plaintiff further responds that the same article of the Convention, on which the IRS relies, provides that any information received within the exchange "shall be treated as secret and shall not be disclosed to any person other than those (including a court or administrative body) concerned with assessment, collection, enforcement, or prosecution [with] respect of the taxes which are the subject of this Convention." *Id.* Further, § 6103(k)(4) uses a permissive "may" rather than the mandatory "shall" when authorizing disclosure to a competent authority of a foreign government, and, therefore, the IRS was not obligated to disclose false return information to the NTA, especially when it knew or should have known that "the Japanese NTA routinely fails to abide by the secrecy provisions of the treaty." (Resp.8.).

Plaintiff also argues that § 6103(k)(4) allows disclosure of return information to a foreign government "but only to the extent provided in, and subject to the terms and conditions of, such convention." (Resp. at 7) (quoting § 6103(k)(4)). The Convention, in turn, provides that all information exchanged with the foreign government-signatory to the Convention "shall be treated as secret and shall not be disclosed to any person." Art. 26(1) of the U.S./Japan Convention. This requirement of secrecy is undoubtedly one of the "terms and conditions" of the Convention. Plaintiff then contends that the IRS "knew or should have known" that the NTA does not abide by the Convention's secrecy requirement and, therefore, the IRS violated a nondisclosure statute when it disclosed to the NTA. (Resp. at 9.)

In support of this argument, Plaintiffs cite *Jones v. United States*, 9 F.Supp.2d 1119 (D.Neb.1998) (*"Jones II"*). In that case, the IRS was held liable for $4.5

million in damages for making an disclosure to an informant, who then publicly disclosed the information he received from the IRS. *Id.* at 1153. The court in *Jones II* assessed damages against the IRS, because it found that further disclosure by the informant was foreseeable to the IRS. *Jones II*, 9 F.Supp.2d at 1143.[14]

Defendant argues that because the *Jones* cases involved a different exception of the statute, the holding of *Jones II* is inapplicable to the instant case. The Court disagrees. The *Jones II* court awarded damages not because of some particular feature of the statutory exception in question, but, because it found that the IRS was at least negligent for failing to foresee that the informant would disclose the tax return information.

In the case at bar, any tax return or return information disclosed by the IRS to a foreign tax authority in furtherance and under the authority of the Convention would constitute an authorized disclosure falling into a category of information excepted from § 7431(a) by § 6103(k)(4) only if the terms and conditions of the Convention were maintained. Plaintiffs argue that the terms and conditions of the Convention were not maintained, at least negligently if not knowingly, because the IRS should have foreseen that the NTA would unlawfully disclose the return information to the press. Therefore, Plaintiff argues, § 6103(k)(4) does not excuse the IRS disclosures from the applicability of the anti-disclosure statute.

At oral argument, Defendant argued that the Convention requires only that the NTA maintain the secrecy and that the section on which Plaintiffs rely does not place on the IRS a duty of assuring itself that the NTA will act in compliance with the Convention. The Court disagrees. Section 6103(k)(4), expressly conditions the disclosure to the foreign government on compliance with the terms of the Convention and such terms, which include secrecy, are binding on both signatories. Consequently, if, as Plaintiffs allege, the IRS knew or should have known, based on the alleged prior history of mutual relations with the NTA, that the latter routinely failed to comply with the terms and conditions of secrecy mandated by the Convention, the IRS's disclosure of any return information–whether true or false–to the NTA was not authorized by the Convention or by the statute.[15]

## C. Whether Plaintiffs' Count I is a "disguised" tort claim.

In addition to the arguments discussed above, Defendant argues that Count I of Plaintiffs' Complaint, entitled "Unauthorized Disclosure of False Information" should be dismissed because it is, in fact, a claim for libel or slander disguised as an action for unauthorized disclosure and, therefore, does not state a claim for which relief can be granted. (Mot. at 13.) Defendant alleges that

[P]laintiffs concede in paragraph 55 [of the Complaint] that this action is not about disclosure of return information.

---

14. In the predecessor case, *Jones v. United States*, 898 F.Supp. 1360 (D.Neb.1995) ("*Jones I*"), the Government advanced the argument that the disclosure to the informant was authorized by 26 U.S.C. § 6103(k)(6), which authorizes disclosure for investigative purposes. However, the *Jones I* court held that the disclosure was unauthorized by § 6103(k)(6). The court found that the disclosure "amounted to notification that the tax returns of [plaintiffs] were 'subject to other investigation or processing,' as defined by 26 U.S.C. § 6103(b)(2) [definition of tax return information]," and therefore it was prohibited by § 7431(a), *Id.* at 1379–80.

15. In its Motion to Dismiss for failure to state a claim, Defendant does not argue that Plaintiffs' Complaint is lacking the two remaining elements of the claim for unauthorized disclosure, *i.e.*, causation of the injury and/or that the disclosure was knowing or negligent. In light of Plaintiffs' allegations that some of the disclosed information was false and that the IRS had knowledge of the NTA's propensity to leak information to the press, the Court finds no deficiency in Plaintiffs' Complaint with respect to these two elements of Plaintiffs' claims for unauthorized disclosure.

That paragraph states: "The false information released to the NTA would have, if true, constituted return and return information under the provisions of 26 U.S.C. § 6103(b)(1) and (2)." Simply put, according to [P]laintiffs [C]omplaint, the information released from the IRS to the NTA–at least the portion out of which [P]laintiffs are claiming damages–is not tax return information.[16] *Id.* Defendant further argues that because Count I alleges that the IRS knew or should have known that the information it disclosed to the NTA was false and that dissemination of that false information caused Plaintiffs' damages, Plaintiffs' claim in Count I sounds in tort. (Mot. at 13.) "The Complaint makes it clear that the falsity of information disclosed has caused the damages being claimed." *Id.*

In Response, Plaintiffs argue that Defendant attempts to misconstrue their argument, and that paragraph 55 of the Complaint does not support Defendant's contention that Plaintiffs' Count I sounds in tort. That paragraph, Plaintiffs say, "is not an allegation or admission by Plaintiffs that false information is not tax return information. It is simply an allegation that the type of false information disclosed was that peculiar [sic][17] type of information described in section 6103(b), *i.e.*, return information. Plaintiffs certainly acknowledge that false information can also constitute tax return information for pur-

poses of a section 7431 action, as is herein alleged." (Resp. at 9.) Plaintiffs further points out that "[w]hile disclosure of false information may be defamatory, this is not the gravamen of Plaintiffs' claim." *Id.* Plaintiffs' claim is that the disclosure of false information was not authorized by the statute and that it caused Plaintiffs economic damages as well as emotional distress to the individual Plaintiffs. *Id.* Both types of damages are recoverable. *Id.*[18]

In Reply, Defendant argues that because under Arizona law, "[t]o be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty or integrity, virtue or reputation."[19] and because, in the case at bar, "[P]laintiffs allege that erroneous facts and conclusions from an IRS examination were passed along to the NTA, when the IRS knew or should have known the information was false, and that the communication of this information resulted in economic damages to the [P]laintiffs," Plaintiffs' Count I "is a garden-variety defamation claim." (Rpl. at 10.) Further, Defendant states that because Plaintiffs made clear in their Response "that they are not litigating whether alleged disclosures from the NTA to the Japanese press are actionable under § 7431, the entire [C]omplaint, not just Count One, consti-

---

16. It is unclear which portion of the disclosed information Defendant characterizes as "at least the portion out of which plaintiffs are claiming damages." Under the statutory definition of tax return information, and in light of the Court's prior discussion, Plaintiffs damages, if any are awarded, may result from disclosure of all the information disclosed by the IRS to the NTA. The distinction between disclosure of false as opposed to actual return information may be relevant only for the purpose of establishing scienter necessary for the determination whether the alleged unlawful disclosures were made willfully and knowingly or only negligently.

17. Plaintiffs probably meant to use the word "particular".

18. In support of the damages argument, Plaintiffs cite *Jones II*, 9 F.Supp.2d at 1153,

which awarded plaintiff $4.5 million for wrongful disclosure which caused the collapse of Jones OR Company, and $325,000 in damages for emotional distress.

19. Defendant relying on *Olive v. City of Scottsdale*, 969 F.Supp. 564, 575 (D.Ariz. 1996) and cites *Turner v. Devlin*, 174 Ariz. 201, 848 P.2d 286, 289–89 (1993). Neither of the two cases involved a disclosure of unauthorized information by a government agency to a foreign government agency and a resultant publication in the mass media. The former case involved plaintiffs' claim for defamation due to defendants' reporting of the suspected sexual harassment. The latter involved an allegedly false report of misconduct a police officer.

tutes a disguised action for libel or slander." [20] (Rpl. at 10 n. 7.) The Court disagrees.

 Merely because Plaintiffs claim damages to their business and/or personal reputation, does not convert their unauthorized disclosure claim into a defamation claim, because the two claims are not necessarily mutually exclusive. *See Jones II*, 9 F.Supp.2d 1119 (D.Neb.1998) (the obvious purpose of prohibiting unauthorized disclosures is to protect the personal and business reputation of the taxpayer). *Id.* at 1143. Even if the elements of Plaintiffs' claims would fit the *prima facie* case for defamation under Arizona law, Defendant does not offer any authority for the proposition that a defamation claim under state law is Plaintiffs' exclusive remedy precluding Plaintiffs from bringing a claim for alleged unauthorized disclosure by the IRS under a federal statute.

Taking all the reasonable inferences in Plaintiffs' favor as the Court must on this Motion to Dismiss, the Court finds that the factual allegations of Plaintiffs' Complaint, if proven, would support Plaintiffs' claim for unauthorized disclosure under § 7431. Consequently, Defendant's Motion to Dismiss for failure to state a claim will be denied.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Complaint for failure to state a claim is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Complaint as untimely (Doc. # 13) is granted without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend the Complaint made at oral argument is granted. Plaintiffs may file an Amended Complaint setting forth the factual basis in support of the timeliness of their action, as explained in this Order, on or before October 2, 2000.

opposed to false information, may be actionable as libel or slander.

---

**20.** It is unclear how Defendant arrived at this conclusion, but Defendant offers no authority for the proposition that disclosure of actual as